IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMAL CAMMACK, | CASE NO. 1:20-cv-02056-SO |
| Petitioner, | JUDGE SOLOMON OLIVER, JR. |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| SHELDON EDWARDS, Warden, | REPORT AND RECOMMENDATION |
| Respondent. | |

On September 11, 2020, Petitioner Jamal Cammack, while a prisoner in state custody, filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). On January 12, 2022, Respondent Sheldon Edwards, in his official capacity as Warden of the Mansfield Correctional Institution (hereinafter, the State), filed an Answer and Return of Writ. (ECF #10). Mr. Cammack did not file a Traverse.

The District Court has jurisdiction over the petition under § 2254(a). On November 20, 2020, pursuant to Local Civil Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a Report and Recommendation. (Non-document entry of Nov. 20, 2020). On February 15, 2022, the matter was reassigned to me pursuant to General Order 2022-03. (Non-document entry of Feb. 15, 2022).

1

For the reasons discussed below, I recommend the District Court **DISMISS** the petition in its entirety. I further recommend the District Court **DENY** a certificate of appealability for all grounds for relief.

PROCEDURAL HISTORY

A.     Factual Findings of the Court of Appeals

The Ohio Court of Appeals, Eighth District, set forth the facts of this case on direct appeal. These factual findings "shall be presumed to be correct" and Mr. Cammack has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Eighth District determined:

> [¶ 2] In 2015, in response to the local councilman's complaint, the Cleveland Police Department began working to eradicate gain activity in the area of East 156th Street and St. Claire Avenue in the Collinwood area. While operations were ongoing, Cammack became a target of a drug sting investigation by the department's gang impact unit ("GIU") who received reports in August 2016 that Cammack was selling heroin. The GIU was also advised that Cammack was a high-ranking member of the 156 Bricks gang that was affiliated with the Heartless Felons. GIU detectives conducted eight undercover drug buys from Cammack for a total of 10.20 grams of heroin and purchased a firearm.
>
> [¶ 3] On September 27, 2016, without the knowledge of the GIU, Cammack was detained by police for traffic violations and officers allegedly observed suspected drug activities. Cammack was arrested, handcuffed, and attempted to escape but was apprehended down the block. Cammack had 4.09 grams of heroin, 0.5 grams of cocaine, $1,665 in currency, two cell phones, and a scale with residue. The search warrant execution[sic] at Cammack's residence revealed drug packaging materials with cocaine residue, a scale with heroin residue, a shotgun barrel, gloves, and 82.93 grams of heroin.
>
> [¶ 4] Two cases were filed for a total of 38 charges for gang activity, drug trafficking and possession, and possession of criminal tools. Counts 1-31 arose from the undercover operation and serve as the underlying case in this appeal. Counts 32-38 for drug possession and trafficking, possession of criminal tools, resisting arrest and

escape were issued due to the traffic stop in *State v. Cammack*, Cuyahoga C.P. No. CR-18-631454.

[¶ 5] On April 30, 2019, Cammack entered a guilty plea to what the state labeled "a package plea" that encompassed the charges in the instant case and the traffic stop case. Cammack pled guilty to the following:

Count 1: Criminal gang activity 2923.42(A), second-degree felony.

Count 2: Trafficking offense 2925.03(A)(2), first-degree felony.

Count 5: Possessing criminal tools 2923.24(A), fifth-degree felony with forfeiture specification(s) (R.C. 2941.1417).

Count 9: Trafficking offense 2925.03(A)(1), fourth-degree felony.

Count 15: Trafficking offense 2925.03(A)(1), fourth-degree felony.

Count 21: Trafficking offense 2925.03(A)(1), fifth-degree felony, with firearm specification(s) – 1 year (2941.141), forfeiture specification(s) (2941.1417).

Count 24: Having weapons while under disability 2923.13(A)(2) F3.

Count 29: Trafficking offense 2925.03(A)(1) F3.

Count 32: Trafficking offense 2925.03(A)(2) F3 with forfeiture specification(s) (2941.1417), schoolyard specification(s).

Count 34: Trafficking offense 2925.03(A)(2) F4 with forfeiture specification(s) (2941.1417), schoolyard specification(s).

Remaining counts are nolled. The [trial] court accepts defendant's guilty plea. Defendant to forfeit to the state: digital scale, gloves and/or shotgun case with barrel, gun, serial # PBR6291, 2 cell phones, and $1,665.00 U.S. currency. 3 years discretionary post release control explained for Counts 5, 9, 15, 21, 24, 29, 32, and 34.

Journal entry no. 108825412 (May 21, 2019), p. 1.

[¶ 6] On May 21, 2019, Cammack was sentenced to imprisonment for ten years. Consecutive terms of two years were imposed on the Count 1 conviction for criminal

gang activity and eight years for the Count 2 trafficking offense. The remaining sentencings, including specifications, were run concurrent with the ten-year period.

[¶ 7] Appellant was indicted by the grand jury in the Trumbull County Court of Common Pleas on one count of Burglary, a felony of the second degree, in violation of R.C. 2911.12(A)(2) and (D). Appellant entered a plea of not guilty.

*State v. Cammack*, 2020 WL 2498283, at *1-2 (Ohio Ct. App. 2020).

**B.     State Court Conviction**

On September 26, 2018, a Cuyahoga County Grand Jury returned 38-count indictment against Mr. Cammack for charges of gang activity, drug trafficking, drug possession, possession of criminal tools, having weapons under disability, carrying a concealed weapon, resisting arrest, and escape. (State Court Record, ECF #8-1, PageID 41-60). Counts 1-31 arose from the undercover operations on multiple dates and Counts 32-38 arose from a traffic stop. (*Id.*). Specifically, he was indicted on one count of gang activity, seventeen counts of trafficking in heroin, eleven counts of possession of heroin, two counts of possession of cocaine, two counts of possession of criminal tools, one count of having weapons under disability, one count of carrying a concealed weapon, one count of resisting arrest, and one count of escape. (*Id.*). Mr. Cammack, through counsel, pled not guilty to all counts. (*Id.* at PageID 61).

On April 30, 2019, Mr. Cammack, through counsel, retracted his not guilty pleas and pled guilty to the following counts: one count of engaging in criminal gang activity; seven counts of trafficking in heroin; one count of possession of criminal tools; and one count of having weapon while under disability. (*Id.* at PageID 62-63). The trial court accepted his change of plea, found Mr. Cammack guilty, and dismissed the remaining counts. (*Id.*). On May 21, 2019, the court ordered Mr. Cammack to serve an aggregate sentence of ten years. (*Id.* at PageID 64-65). In addition, the

4

court notified Mr. Cammack of the imposition of five years of post-release control upon his release from prison. (*Id.* at PageID 65).

**C.      Direct Appeal**

Mr. Cammack, through counsel, subsequently appealed to the Eighth District. (*Id.* at PageID 67). In his brief, Mr. Cammack set forth the following assignments of error:

1. The trial court plainly erred by failing to merge Cammack's engaging in criminal gang activity offense with the remaining offenses.

2. The trial court unlawfully ordered Jamal Cammack to serve consecutive sentences, in violation of his rights to due process, guaranteed by Section 10, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution.

(*Id.* at PageID 80).

On May 14, 2020, the Eighth District affirmed the trial court's judgment. (*Id.* at PageID 115-30). Mr. Cammack, *pro se*, filed a notice of appeal of the Eighth District's judgment to the Supreme Court of Ohio. (*Id.* at PageID 132-49). In his memorandum in support of jurisdiction, Mr. Cammack asserted the following propositions of law:

I. Cammack assigns as plain error the trial court's sentence in this case. The trial court erred by failing to merge the Count (1) Gang Activity offense with the remaining offenses.

II. The trial court unlawfully ordered consecutive sentences in violation of Cammack's constitutional rights.

(*Id.* at PageID 140). On August 18, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S. C. Prac. R. 7.08(B)(4). (*Id.* at PageID 140). The Supreme Court of Ohio declined the accept jurisdiction of the appeal. (*Id.* at PageID 168).

**FEDERAL HABEAS CORPUS**

Mr. Cammack, pro se, filed the present petition for a writ of habeas corpus alleging the following grounds for relief:

> GROUND ONE: The trial court violated petitioner's 14th, 6th, 5th Amendments of the United States Constitution. The trial court violated Federal and State laws amounted to plain error by failing to merge Cammack's engaging in criminal gang activity offense with the balance of the offenses. [sic].
>
> GROUND TWO: The trial court unlawfully ordered Jamal Cammack to serve consecutive sentences and violation of his 14th Amendment right to due process, guaranteed by Section Article I of the Ohio Constitution and the 5th and 6th amendment to the United States constitution. [sic].

(ECF #1 at PageID 5-7).

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Cammack's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an

6

unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Habeas courts review the last explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). For purposes of § 2254(d)(1), clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court decision is contrary to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court has decided on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Williams*, 529 U.S. at 405. A state court does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision involves an unreasonable application of the Court's precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the state prisoner's case, or if the state court either unreasonably extends a legal principle from the Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. The appropriate measure of whether a state court decision unreasonably applied

7

clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), state court factual determinations stand unless they are objectively unreasonable in light of the evidence presented in state court. *Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18.

Under federal law, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). Comity principles also require federal courts to defer to a state's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-129 (1982); *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986) (federal courts must accept a state court's interpretation of its statutes and rules of practice).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from

providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing *de novo* questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007).

**State Law Claims Not Cognizable on Federal Habeas Review.** The District Court will not have jurisdiction over a petitioner's claims for purposes of habeas corpus review if the claims do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "The writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process."). Merely asserting that a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (internal quotation omitted); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (internal citation omitted).

Nonetheless, habeas relief may be available if an alleged error of state law subjected the petitioner to a "fundamentally unfair" criminal process. *Williams*, 460 F.3d at 816. "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). "A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (stating that a federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure). The habeas petitioner bears the burden of showing "the principle of procedure violated by the rule (and allegedly required by due process)" is fundamental. *Bey*, 500 F.3d at 521.

### DISCUSSION AND ANALYSIS

**A.    Ground One**

In Ground One, Mr. Cammack asserts the trial court violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution by not merging the criminal gang activity offense with the balance of the offenses because the offenses were committed with the same animus and under a common scheme. (*See* ECF #8-1 at PageID 83-84).

As discussed above, a federal habeas court may not consider a claim asserting a violation of a state statute. To the extent Mr. Cammack contends his convictions and sentence violate Ohio Rev. Code § 2941.25, Ohio's statute regarding allied offenses of similar import, his claim is not cognizable on federal habeas review. Thus, I recommend that this ground be **DISMISSED.**

Even if considered on its merits, this claim is without merit. "The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Duncan v. Sheldon*, No. 1:11 CV 695, 2014 WL 185882, at *31 (N.D. Ohio Jan.15, 2014) (quoting *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (internal citations omitted)). However, double jeopardy is not violated if the state legislature intended to impose cumulative punishment when the same conduct violates two statutes. *See Jackson v. Smith*, 745 F.3d 206, 211-12 (6th Cir. 2014) (citing *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *Volpe*, 708 F.3d at 696-97 (citing *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984)). Federal courts must defer to a state court's determination that the state legislature intended multiple punishments for a single criminal incident. *Volpe*, 708 F.3d at 697. In determining a state legislature's intent, "a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

The Eighth District addressed this issue on direct appeal, as follows:

> [¶ 9] R.C. 2941.25 governs allied offenses and provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." "An allied offenses claim is consistent with an admission of guilt and therefore is not waived by pleading guilty to offenses that might be allied offenses of similar import." A trial court does not have a duty to inquire about allied offenses if defense counsel fails to raise the issue at sentencing.
>
> [¶ 10] In addition,

11

> An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

[¶ 11] Shortly before *Rogers* was issued, the Ohio Supreme Court explained the logistics of a merger analysis:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.
>
> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

\*\*\*

[¶ 17] The R.C. 2923.42 criminal gang activity statute provides in relevant part:

> (A) No person who actively participates in a criminal gang, with knowledge that the criminal gang engages in or has engaged in a pattern of criminal gang activity, shall purposely promote, further, or assist any criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code, or shall purposely commit or engage in any act that constitutes criminal conduct, as defined in division (C) of section 2923.41 of the Revised Code.
>
> (B) Whoever violates this section is guilty of participating in a criminal gang, a felony of the second degree.

[¶ 18] Criminal conduct is defined as:

the commission of, an attempt to commit, a conspiracy to commit, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of an offense listed in division (B)(1)(a), (b), or (c) of this section or an act that is committed by a juvenile and that would be an offense, an attempt to commit an offense, a conspiracy to commit an offense, complicity in the commission of, or solicitation, coercion, or intimidation of another to commit, attempt to commit, conspire to commit, or be in complicity in the commission of an offense listed in division (B)(1)(a), (b), or (c) of this section if committed by an adult.

[¶ 19] The state argues that merger is not appropriate under *Ruff* because the offenses: (1) were not similar in significance or import; (2) were separately committed; and (3) were committed with separate motivation or animus. "An affirmative answer to any of the above will permit separate convictions."

[¶ 20] Cammack offers that the gang activities are effectively all-encompassing for purposes of merger. In the beginning of 2015, the local councilman requested police intervention to curb the violent heavy gang activity in the area. Law enforcement "converged upon the neighborhood in several locations and started doing proactive law enforcement techniques." While the gang activity investigation began in 2015, GIU detectives testified that they did not initiate the drug sting operation until August 2016, after receiving notice that Cammack was selling drugs. The detectives were also informed that Cammack was a high-level member of the 156 Bricks gang.

[¶ 21] The gang activity indictment covers the January 1, 2015, to October 17, 2016 timeframe. The indictment lists: drug trafficking, drug possession, having weapons while under disability, carrying concealed weapon, possession of criminal tools, aggravated riot, participating in criminal gang, felonious assault, and burglary. The counts that specifically relate to drug sale and related activities cover the August and September 2016 timeframe. The indictments are for transactions and activities that were separately committed, at separate times, and resulted in separate, identifiable harm. According to the record, Cammack said that he sold narcotics to support himself, thus providing a motive separate from that of the gang activity involvement.

[¶ 22] Based on the foregoing, we do not find by our plain error review that Cammack has presented a "reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus."

[¶ 23] Cammack's first assignment of error is overruled.

*State v. Cammack*, No. 108705, 2020 WL 2498283, at *2-5 (Ohio Ct. App. May 14, 2020).

The Eighth District analyzed Mr. Cammack's claim under Ohio's allied offenses statute and its "analysis is entirely dispositive of the federal double jeopardy claim." *Jackson*, 745 F.3d at 210. Because Mr. Cammack has not shown or argued that the state court decision is contrary to, or an unreasonable application of, established federal precedent, or an unreasonable determination of the facts in light of the evidence presented, I recommend Ground One – if considered on its merits – be **DENIED**.

**B.     Ground Two**

In Ground Two, Mr. Cammack asserts the trial court's imposition of consecutive sentences violated his right to due process. As noted above, a federal court may not grant habeas relief for perceived errors of state law, *Estelle,* 502 U.S. at 67, unless the error resulted in the denial of fundamental fairness, *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988). To the extent Mr. Cammack alleges the trial court erred in interpreting and applying Ohio law in imposing consecutive sentences, this is an issue of state law that is not cognizable on federal habeas review. *See Wilson v. Corcoran,* 562 U.S. 1, 5 (2010) (lower federal court's consideration of Indiana state court's interpretation of Indiana sentencing laws improper on federal habeas review); *Oregon v. Ice,* 555 U.S. 160, 163 (2009) (states may permit trial court judges the discretion to order consecutive sentences after making a factual determination); *Coleman v. Koloski,* 415 F.2d 745, 746-47 (6th Cir. 1969) (whether sentences may run consecutively does not present a federal constitutional question); *Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law" that "is not cognizable in a federal habeas corpus proceeding"); *Hoffman v. Tribley,* No. 13-10868, 2013 WL 1137353, *2 (E.D. Mich. Mar. 19, 2013) (holding a claim that the trial court improperly ordered

14

consecutive sentences fails to state a claim upon which habeas relief may be granted). The imposition of consecutive sentences does not violate clearly established federal law or make state court proceedings fundamentally unfair. *Powers v. Warden, London Corr. Inst.*, No. 2:13-CV-1179, 2015 WL 46136, *4 (S.D. Ohio Jan. 2, 2015); *see also Barker v. Brunsman*, No. 2:09-cv-325, 2009 WL 1586209, *2 (S.D. Ohio June 4, 2009).

In Ground Two, Mr. Cammack has not stated a cognizable claim for relief; therefore, I recommend the District Court **DISMISS** the claim in Ground Two.

### CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability (COA) and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A showing that the appeal would succeed on the claim is not required to grant a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Cammack has not made a substantial showing of the denial of any constitutional right. Jurists of reason would not find it debatable whether any of the grounds for relief are valid claims of the denial of constitutional rights. Similarly, no procedural ruling appears to be in error. Therefore, I recommend the District Court **DENY** Mr. Cammack a certificate of appealability as to any ground for relief.

CONCLUSION AND RECOMMENDATION

For the foregoing reasons, I recommend Mr. Cammack's habeas petition be **DISMISSED** in its entirety. I also recommend the District Court **DENY** a certificate of appealability for all grounds for relief.

Dated: July 12, 2023

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).